UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:

BENEDETTO SALVUCCI AND
NORMA MARIE SALVUCCI,

Chapter 7
Case No. 05-21229-WCH

Debtors.

## MEMORANDUM OF DECISION

### I. Introduction

The matter before the Court is the Objection by Chapter 7 Trustee to Debtors' Claim of Exemption in Additional Cash (the "Objection to Exemption"). The Chapter 7 Trustee (the "Trustee") objects to the claim of exemption in cash by Benedetto Salvucci and Norma Marie Salvucci (the "Debtors") due to their bad faith failure to disclose the cash in their petition or at their initial meeting of creditors. The Debtors claim that their failure to disclose the cash was due to their old age and misunderstanding of bankruptcy law. I held a hearing and took the matter under advisement. I now sustain the Objection to Exemption.

### II. Facts

On July 13, 2005, the Debtors sold their house and realized a net gain of $63,000. On October 12, 2005, the Debtors filed for Chapter 7 bankruptcy protection.

In Schedule B of their petition, the Debtors listed $8,000 for "cash on hand." In Schedule C, they claimed an exemption in $8,000 pursuant to 11 U.S.C. § 522(d)(5). In their Statement of Financial Affairs, at number 10, "Other transfers," they disclosed the sale of their home and the $63,000 net gain therefrom but represented that only $8,000 of the $63,000 remained. They

1

listed under number 3, "Payments to creditors," that they had made "various payments" to creditors through a consumer credit counselor, though they entered $0.00 for amount paid and amount owing. Under number 8, "Losses," they disclosed "small losses of money over time on gambling and recreation."

On November 18, 2005, the Debtors appeared at their § 341 meeting of creditors. At the § 341 meeting, the Trustee questioned them about how they had spent the difference between the $63,000 they realized from the sale of their home and the $8,000 they listed in their schedules. The Debtors claimed that they used the money to pay debts to friends and family members, gambling losses, bills, household expenses including the purchase of furniture, and some of their disabled daughter's expenses. The Trustee emphasized that it was the Debtors' responsibility to provide the Court with information detailing how they spent the money they received from the sale of their home. The Debtors did not disclose any significant new information. The Trustee requested a more detailed description of how the money was spent and continued the § 341 meeting to allow the Debtors to gather receipts and other documents to support their claims.

On January 10, 2006, one day before the continued § 341 meeting, the Debtors filed Debtor's First Amendment of Schedules & Statement of Affairs (the "Amendment").[1] The Amendment included, *inter alia*, Amended Schedule B, Amended Schedule C, and the Amended Statement of Financial Affairs. In Amended Schedule B, the Debtors listed "cash on hand" of $8,000. For "Other personal property," the Debtors listed "Additional cash" of $22,000. In Amended Schedule C, they claimed an exemption in $8,000 under 11 U.S.C. § 522(d)(5). Also under that subsection they claimed exemptions of $1,500 and $10,500 in "Additional cash."

---

[1] Pursuant to M.L.B.R. 1009-1, the Debtors amended by notice, not by motion.

2

In the Amended Statement of Financial Affairs, the Debtors made several new disclosures. At number 3, "Payments to creditors," the Debtors disclosed payments to five creditors totaling $10,499.47. At number 7, "Gifts," they disclosed a $300 gift to their church and over $6,000 in payments made to creditors of their disabled daughter in the year before filing. At number 8, "Losses," they disclosed "approximately $14,000 lost according to Debtors (gambling)." At number 10, "Other transfers," the Debtors disclosed net proceeds from the sale of their home of $63,000, but struck their representation that they held $8,000 from the $63,000 in sale proceeds.

At the continued § 341 meeting held on January 11, 2006, the Debtors claimed that their old age and attendant poor memories, along with their confusion about what they were required to disclose in their bankruptcy schedules, were to blame for their omission. They further indicated that they thought of the $22,000 as separate from the $8,000 because they were holding it for emergencies and to pay any imminent expenses that might arise.[2] The Debtors also delivered checks totaling $10,000 to the Trustee.

On January 18, 2006, the Trustee filed the Objection to Exemption, in which he requested that the Debtors be denied their $1,500 and $10,500 exemption claims in the $22,000 in "Additional cash" disclosed in Amended Schedule B because of their bad faith in attempting to conceal that money from the Trustee. The Trustee also asked the Court to order the Debtors to turn over the $12,000 that they are holding in satisfaction of their claimed exemption. In their Opposition by Debtors to Objection by Chapter 7 Trustee to Debtors' Exemption in Additional

---

[2] The Debtors signed the petition under the pains and penalties of perjury. The Debtors testified under oath at the two § 341 meetings.

3

Cash (the "Opposition"), the Debtors claimed that they had relied on incorrect information about the bankruptcy process that they heard from an attorney who is not their counsel.

III. **Analysis**

In order to prevail on an objection to a debtor's exemption

> [T]he [t]rustee must prove, by a preponderance of the evidence, that the [d]ebtors are not entitled to the exemptions claimed. . . . Once the [t]rustee has made a prima facie showing that the claimed exemptions should be disallowed, the burden shifts to the [d]ebtors to prove that the exemptions are legally valid.

*Henkel v. Green (In re Green)*, 268 B.R. 628, 653 (Bankr. M.D. Fla. 2001).[3]

> Generally, if a debtor intentionally conceals or fails to disclose estate property, the debtor will be barred from claiming such property as exempt, even if the property would have been exempt had it been properly scheduled and claimed. . . . Intent to conceal is a factual determination to be made by the bankruptcy court based upon the evidence presented and inferences drawn therefrom at trial. . . . Bad faith is generally determined from an examination of the relevant surrounding circumstances.

*Wood v. Premier Capital, Inc. (In re Wood)*, 291 B.R. 219, 226 (B.A.P. 1st Cir. 2003); *See also Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir. 1982) (". . . [C]oncealment of an asset will bar exemption of that asset.").

In *Wood*, the debtor concealed a pre-petition worker's compensation claim and the settlement of that claim which occurred two years after she filed bankruptcy. 291 B.R. at 222. When the debtor received the settlement proceeds she moved to amend Schedule B and Schedule C to list the settlement proceeds and claim an exemption in them. *Id*. The bankruptcy court found that the debtor had deliberately concealed the claim and the settlement until after the

---

[3]The Debtors argue that the Trustee must prove by clear and convincing evidence that the Debtors are not entitled to their exemption. The Debtors are incorrect. They appear to be confusing the standard required for denying a debtor leave to amend her schedules with the standard required for barring a debtor's claim of exemption.

4

settlement proceeds had been disbursed. The court refused to allow the debtor to claim an exemption in the proceeds and the bankruptcy appellate panel affirmed. *Id.* at 227.

The Debtors' original Statement of Financial Affairs, which is otherwise woefully lacking in detail, explicitly represented that at the time of filing $8,000 remained from the proceeds generated by the sale of the Debtors' home. The Debtors' original Schedule B is equally clear in its disclosure that the Debtors possessed $8,000 in cash. At the first § 341 meeting, the Trustee told the Debtors that it was their obligation in bankruptcy to disclose fully their finances, and yet the Debtors made no indication that they were holding an additional $22,000 in cash from the proceeds of the sale.

The Debtors' claim that they did not understand the bankruptcy process and that they did not think to include the $22,000 in their original schedules is not credible. The $22,000 that the Debtors initially concealed was not of a different character than the $8,000 they did disclose. Both amounts consisted of cash held by the Debtors at their place of residence. Additionally, the Debtors did not take the opportunity to correct the record at their first § 341 meeting when the Trustee questioned them about their use of the $63,000 in sale proceeds. There is no credible explanation for the Debtors' behavior other than that they were attempting to conceal $22,000 from the Trustee and that the Trustee's persistence led them to the conclusion that they would not succeed, causing them to disclose the additional cash to their counsel and to the Court.

The Debtors claim that because they disclosed the additional cash at the continued § 341 meeting, they did not attempt to conceal the asset. In *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 786 (9th Cir. 2000), and *Kobaly v. Slone (In re Kobaly)*, 142 B.R. 743 (Bankr. W.D. Pa. 1992), the cases which the Debtors cited in support of this proposition, the debtors disclosed certain

5

assets at their § 341 meetings despite not listing those assets in their bankruptcy petitions. In neither case is there any indication that the debtors concealed assets at a first § 341 meeting only to amend their schedules to reveal additional assets on the eve of a continued § 341 meeting, as is the case here. Neither is there any indication that the debtors in *Kobaly* and *Arnold* included any information in their initial schedules that actively misrepresented their assets, as the Debtors did here by representing that only $8,000 remained from the sale of their home and that their cash in hand totaled $8,000.

The Debtors additionally claim that their conduct is far less egregious than the conduct of debtors in some of the cases cited in the Objection to Exemption and that by denying their additional $12,000 exemption I would be punishing them for their honesty and deterring future debtors from correcting their mistakes. "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Wood*, 291 B.R. at 226. The Bankruptcy Code's requirement of full disclosure is not a matter of degree, but a clear mandate that debtors fully report the state of their finances at the time they file their schedules.[4]

The Trustee has made a prima facie showing that the Debtors are not entitled to the $12,000 exemption they claim in additional cash, thus shifting the burden to the Debtors to demonstrate that the exemptions are legally valid. The Debtors have not been able to meet their burden, because their excuses for not disclosing the $22,000 at the time of filing are not convincing. I conclude that the Trustee has proven, by a preponderance of the evidence, that the

---

[4]The Debtors' arguments that the Court should not deny them leave to amend are moot because by their notice, see Docket No. 12, they amended their schedules.

6

Debtors are not entitled to their claimed $12,000 exemption because of their bad faith concealment of the $22,000.

IV. **Conclusion**

For the reasons discussed above, I will enter an order sustaining the Objection to Exemption.

William C. Hillman
United States Bankruptcy Judge

Dated: 3/14/06

Counsel Appearing:

For the Debtors, Terrence L. Parker, Boston, MA.

For the Trustee, Melvin S. Hoffman, Looney & Grossman, Boston, MA.